

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| AMY C. GALLOWAY, LAURIE A. CORRAL, STEPHEN G. GALLOWAY, and BRIAN MACEACHERN, <br><br> Plaintiffs, <br><br> v. <br><br> CHS ACQUISITION CORP. d/b/a CHICAGO HEIGHTS STEEL, HIGHWAY STEEL, INC., RMI, INC., and BRADLEY R. CORRAL, <br><br> Defendants. | No. 22-cv-6059 |

### COMPLAINT

Plaintiffs Amy C. Galloway, Laurie A. Corral, Stephen G. Galloway, and Brian MacEachern (collectively, "Plaintiffs"), by their undersigned counsel, state as their Complaint against Defendants CHS Acquisition Corp. (d/b/a Chicago Heights Steel) ("CHS"), Highway Steel, Inc., RMI, Inc., and Bradley R. Corral (collectively, "Defendants"), as follows:

### SUMMARY OF ACTION

1.     At the direction of Defendant Bradley R. Corral ("Brad Corral"), Defendant CHS has failed to comply with its statutory duties to provide books and records to Plaintiffs, who are trustees and beneficiaries of trusts that are registered owners of Class B common shares of CHS. Together, Plaintiffs control ▮▮▮▮ of the outstanding shares in CHS, and these shares represent Plaintiffs' largest assets. CHS has two classes of stock, however, and Brad Corral controls all of the voting shares of CHS and controls CHS's business operations as its President. From January 1998 until December 2021, Plaintiffs Amy C. Galloway ("Amy Galloway") and

Laurie A. Corral ("Laurie Corral") served as directors of CHS Acquisition Corp., Highway Steel Inc., and RMI, Inc.

2.      In the fall of 2021, Plaintiffs – who were directors of CHS at the time – learned that Defendant Brad Corral was considering a potential sale of CHS and intended to take ten percent of the aggregate purchase price from the sale as a "transaction bonus" before dividing the rest among the shareholders by ownership amounts.  Plaintiffs began asking Brad Corral and CHS's corporate counsel for the governing corporate documents to evaluate their rights and responsibilities as directors and shareholders in the event that Brad Corral pursued the sale. Notwithstanding directors' common law rights to inspect company records and the confidentiality requirements under CHS's governing documents and common law, Brad Corral insisted that Laurie Corral and Amy Galloway could only *view* the governing documents, only at a board meeting *in person* at CHS's office (across the country from where Laurie Corral and Amy Galloway live), and only *after signing a separate non-disclosure agreement*.  Even though Laurie Corral and Amy Galloway expressed their willingness to sign a separate non-disclosure agreement, Laurie Corral and Amy Galloway still did not receive a copy of these basic corporate documents until *after* submitting a shareholder demand letter to examine books and records.

3.      In or around November 2021, Defendant Brad Corral considered significantly increasing CHS's debt obligations with Fifth Third Bank through a new term note and an expansion of CHS's revolving note commitment amount.  Per CHS's bylaws, any increase in debt obligations requires a resolution of the board of directors.  Defendant Brad Corral asked Plaintiffs Laurie Corral and Amy Galloway – in their capacities as directors – to sign a resolution approving this increase in financing.  Hoping to understand CHS's need for the financing and ensure CHS's ability to service the debt, Plaintiffs Laurie Corral and Amy Galloway asked for

basic information about the proposed financing and CHS's financial position in order to make an informed decision about whether to approve the proposed board resolution. Defendant Brad Corral provided incomplete answers to their questions and refused to share details about the transaction and CHS's financial and operational health, which further raised concerns among Plaintiffs.

4.     Rather than provide Plaintiffs Laurie Corral and Amy Galloway all of the information they requested about the proposed financing – information Plaintiffs reasonably believed necessary to discharge their fiduciary duties as directors of CHS – Defendant Brad Corral unilaterally removed Plaintiffs Laurie Corral and Amy Galloway as directors on December 9, 2021. By ousting Plaintiffs Laurie Corral and Amy Galloway from their director seats, Defendant Brad Corral left the company with just two directors: himself and their aging father, Frank L. Corral ("Frank Corral"). Only after serving CHS with a books and records demand under 805 ILCS 5/7.75(b) did Plaintiffs Laurie Corral and Amy Galloway learn that Defendant Brad Corral had approved the Fifth Third Bank financing, with the notes *dated November 19, 2021* – before he had even asked Plaintiffs Laurie Corral and Amy Galloway to sign a resolution approving them. This constituted a debt obligation that Defendant Brad Corral apparently executed without a board resolution, in violation of CHS's bylaws.

5.     Unrepresented on the board of directors and unrepresented in voting shares in CHS, Plaintiffs issued a written demand on January 14, 2022 to inspect CHS's books and records to evaluate CHS's financial position, appraise the value of their shares, and determine the amount of compensation that Brad Corral was paying himself as President. CHS provided some documents in response to the initial books and records demand.

6.  On June 22, 2022, Plaintiffs issued a renewed written demand for the same information for the two-quarter period preceding June 2022, a request that CHS refused, offering only to provide a narrow subset of documents.

7.  On September 20, 2022, Plaintiffs issued a third written demand to examine corporate records from 2022 preceding the date of the demand. CHS rejected this request as well.

8.  Plaintiffs seek two remedies. First, pursuant to 805 ILCS 5/7.75(c), Plaintiffs seek a writ of mandamus ordering CHS to allow Plaintiffs to inspect and make extracts of certain corporate books and records related to CHS's 2022 financial performance, financial situation, and business operations. Defendants wrongfully rejected Plaintiffs' demands because they were made for a proper purpose.

9.  Second, pursuant to 805 ILCS 5/7.75(d), based on Defendants' wrongful refusal of Plaintiffs' demands to inspect books and records, Plaintiffs seek an order requiring Defendant Brad Corral to pay Plaintiffs a penalty in the amount of ten percent of the value of Plaintiffs' shares.

**PARTIES**

10.  Plaintiff Amy Galloway is the trustee and beneficiary of The Sherman (GST) Trust u/t/a/d December 28, 2001 ("The Sherman (GST) Trust") that is a registered owner of ▮ shares of Class B common stock of CHS Acquisition Corp. Amy Galloway is also the beneficiary of the Amy C. Galloway 2004 Irrevocable Trust, u/t/a/d June 30, 2004 (Amy C. Galloway 2004 Irrevocable Trust") that is the registered owner of ▮ shares of Class B common stock of CHS Acquisition Corp. Plaintiff Amy Galloway is an adult citizen of Montana and has been at all times relevant to the allegations set forth herein.

11. Plaintiff Laurie Corral is a beneficiary of The Lucy (GST) Trust u/t/a/d December 28, 2001 ("The Lucy (GST) Trust") that is a registered owner of ▮ shares of Class B common stock of CHS Acquisition Corp. Plaintiff Laurie Corral is an adult citizen of North Carolina and has been at all times relevant to the allegations set forth herein.

12. Plaintiff Stephen G. Galloway ("Greg Galloway") is the trustee of the Amy C. Galloway 2004 Irrevocable Trust that is the registered owner of ▮ shares of Class B common stock of CHS Acquisition Corp. Plaintiff Greg Galloway is an adult citizen of Montana and has been at all times relevant to the allegations set forth herein.

13. Plaintiff Brian MacEachern is the trustee of the Laurie Ann Corral 2004 Irrevocable Trust u/t/a/d June 30, 2004 ("Laurie Ann Corral 2004 Irrevocable Trust") that is the registered owner of ▮ shares of Class B common stock of CHS Acquisition Corp. Plaintiff Brian MacEachern is an adult citizen of Canada domiciled in North Carolina with legal permanent residence in the United States and has been at all times relevant to the allegations set forth herein.

14. Defendant CHS Acquisition Corp. (d/b/a Chicago Heights Steel) is a corporation organized and existing under the laws of the State of Illinois whose registered agent and principal place of business are located at 211 East Main Street, Chicago Heights, Illinois 60411. CHS Acquisition Corp. is a family-owned business that manufactures and distributes steel products.

15. Defendants Highway Steel, Inc. and RMI, Inc. are corporations organized and existing under the laws of the State of Illinois whose registered agents and principal places of business are both located at 211 East Main Street, Chicago Heights, Illinois 60411. Highway Steel, Inc. and RMI, Inc. are both wholly owned subsidiaries of CHS Acquisition Corp.

16.     Defendant Brad Corral is the President of CHS. On information and belief, Defendant Brad Corral is the registered owner of ▮ shares of Class A common stock of CHS Acquisition Corp., the trustee or trust beneficiary of the Bradley R. Corral 2004 Irrevocable Trust u/t/a/d June 30, 2004 ("Bradley R. Corral 2004 Irrevocable Trust") that is the registered owner of ▮ shares of Class B common stock of CHS Acquisition Corp., and the controlling shareholder of CHS common stock. Defendant Brad Corral is also the registered agent of Defendants CHS Acquisition Corp., Highway Steel, Inc., and RMI, Inc., with an address of 211 East Main Street, Chicago Heights, Illinois 60411. Upon information and belief, Defendant Brad Corral is an adult citizen domiciled in Illinois and has been at all times relevant to the allegations set forth herein. Plaintiffs Laurie Corral and Amy Galloway are siblings of Defendant Brad Corral.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this case is between citizens of different states in which a citizen of a foreign state is an additional party and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Illinois and Defendants CHS Acquisition Corp., Highway Steel Inc., and RMI, Inc. maintain principal places of business in Cook County, Illinois. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because all Defendants engage in substantial business in this District and a substantial part of the events giving rise to the claim took place within this District.

## FACTS

### STRUCTURE AND OWNERSHIP OF CHS

19.     CHS Acquisition Corp. was incorporated in Illinois on November 1, 1985, with Frank Corral as the registered agent, sole director, and sole shareholder.

20.     CHS is structured under subchapter S of chapter 1 of the Internal Revenue Code (an "S Corporation").

21.     Upon information and belief, in or around May 1990, Frank Corral and Nancy A. Corral ("Nancy Corral"), comprising the board of directors of CHS, executed a resolution amending the corporate bylaws to provide two classes of common stock of the corporation: Class A common stock having one vote per share, and Class B common stock having no votes. In all other respects, the classes of common stock were to be identical.

22.     On January 1, 1998, Frank Corral and Nancy Corral, as the shareholders entitled to vote, and Frank Corral, Nancy Corral, and Brad Corral, as the directors, executed a resolution that amended the corporate bylaws of CHS Acquisition Corp. to set the number of directors at five and elected Frank Corral, Nancy Corral, and their three children, Defendant Brad Corral, Plaintiff Laurie Corral, and Plaintiff Amy Galloway, as directors to serve until their successors are elected or until they sooner die, resign, or are removed.

23.     Also on January 1, 1998, Frank Corral and Nancy Corral, as the shareholders entitled to vote, and Frank Corral, Nancy Corral, and Brad Corral, as the directors, executed two resolutions that amended the corporate bylaws of Highway Steel, Inc. and RMI, Inc. to set the number of directors at five and elected Frank Corral, Nancy Corral, and their three children, Defendant Brad Corral, Plaintiff Laurie Corral, and Plaintiff Amy Galloway, as directors of Highway Steel, Inc. and RMI, Inc. to serve until their successors are elected or until they sooner die, resign, or are removed.

24.     On February 20, 2004, Frank Corral, as the sole owner of record of all outstanding voting shares of CHS Acquisition Corp., Highway Steel, Inc., and RMI, Inc., and all members of each corporation's board of directors executed resolutions that amended the corporate bylaws of CHS Acquisition Corp., Highway Steel, Inc., and RMI, Inc. to set the number of directors at four and elected Frank Corral and his three children, Defendant Brad Corral, Plaintiff Amy Galloway, and Plaintiff Laurie Corral, as directors of each corporation to serve until their successors are elected, or until they sooner die, resign, or are removed.

25.     Pursuant to the bylaws of CHS, the board of directors, by the affirmative vote of a majority of directors then in office, has authority to establish the reasonable compensation of all directors for services to the corporation as directors, officers or otherwise. The bylaws also provide that the board of directors must fix the salaries of officers. *See* Exhibit 1.

26.     Pursuant to the bylaws of CHS, no loans shall be contracted on behalf of CHS and no evidences of indebtedness shall be issued in its name unless authorized by a resolution of the board of directors, which requires a majority vote. *See id.*

27.     On or about May 31, 2013, CHS entered into an agreement with the shareholders of CHS, which included The Lucy (GST) Trust, The Sherman (GST) Trust, The KNK (GST) Trust u/t/a/d December 28, 2001, Brad Corral, Bradley R. Corral 2004 Irrevocable Trust, Amy C. Galloway 2004 Irrevocable Trust, and Laurie Ann Corral 2004 Irrevocable Trust ("Shareholder Agreement"). Laurie Corral, as Trustee of The Lucy (GST) Trust, Amy Galloway, as Trustee of The Sherman (GST) Trust, Linda Corral, as Trustee of the Bradley R. Corral 2004 Irrevocable Trust, and Greg Galloway, as Trustee of the Amy C. Galloway 2004 Irrevocable Trust, were also parties to the Shareholder Agreement. *See* Exhibits 2, 3.

8

28. The Shareholder Agreement documented the number and percentage of issued and outstanding shares of stock of CHS ("Shares"). *See id.*

29. Upon information and belief, Defendant Brad Corral owns ███ Class A voting Shares, representing ███ % of the voting shares in CHS but ███████ % of the total Shares in CHS.

30. Upon information and belief, The Lucy (GST) Trust owns ███ Class B non-voting Shares, representing ███████ % of the total Shares in CHS, with Plaintiff Laurie Corral as the trust beneficiary.

31. Upon information and belief, The Sherman (GST) Trust owns ███ Class B non-voting Shares, representing ███████ % of the total Shares in CHS, with Plaintiff Amy Galloway as the trust beneficiary and Trustee.

32. Upon information and belief, The KNK (GST) Trust owns ███ Class B non-voting Shares, representing ███████ % of the total Shares in CHS.

33. Upon information and belief, the Bradley R. Corral 2004 Irrevocable Trust owns ███████ Class B non-voting Shares, representing ███████ % of the total Shares in CHS.

34. Upon information and belief, the Amy C. Galloway 2004 Irrevocable Trust owns ███████ Class B non-voting Shares, representing ███████ % of the total Shares in CHS, with Plaintiff Amy Galloway as the trust beneficiary and Plaintiff Greg Galloway as the Trustee.

35. The Laurie Ann Corral 2004 Irrevocable Trust owns ███████ Class B non-voting Shares, representing ███████ % of the total Shares in CHS, with Plaintiff Brian MacEachern as the Trustee.

36. Pursuant to the Shareholder Agreement, Shares may not be assigned, pledged, sold or transferred to a purchaser that is not a descendant or a trust held for a shareholder's or

descendant's primary benefit unless shareholders who then own a minimum of two-thirds of all Class A shares and shareholders who own a minimum of two-thirds of all Class B shares agree to assign, pledge, sell or transfer Shares. *See* Exhibit 2.

37.     Pursuant to the Shareholder Agreement, each director is entitled to one vote, and all votes shall be governed by majority ruling. *See id.*

38.     Defendant Brad Corral is the President of CHS and is responsible for all strategic decisions and operations for CHS.

39.     Defendant Brad Corral is also a director of CHS and the controlling shareholder, as he owns *all* of the Class A voting shares.

**CONSIDERATION OF A SALE OF CHS AND NEW FINANCING**

40.     Upon information and belief, sometime before December 2021, Defendant Brad Corral (and potentially other CHS management) began inquiring into the possibility of selling CHS.

41.     Upon information and belief, over the course of eight months in 2021, at least three different investment banks met with and created presentations for Defendant Brad Corral and CHS management to evaluate a potential sale of CHS.

42.     Plaintiffs Laurie Corral and Amy Galloway, despite serving as directors at the time, were not aware of any meetings with investment banks before the meetings occurred.

43.     Frank Corral told Plaintiffs Amy Galloway and Greg Galloway in or around late August 2021 that Defendant Brad Corral was actively considering a sale of the company. This was the first indication that Plaintiffs Amy Galloway and Greg Galloway received regarding an active effort to sell CHS.

44.     Frank Corral also told Plaintiffs Amy Galloway and Greg Galloway in or around late August 2021 that Defendant Brad Corral intended to take a larger percentage of the aggregate purchase price as a transaction bonus before dividing the remainder among the shareholders in equal amounts per share.

45.     In or around early September 2021, Defendant Brad Corral called Plaintiff Greg Galloway indicating that he intended to take 10% of the aggregate purchase price before dividing the remainder among the shareholders in equal amounts per share.

46.     On October 27, 2021, CHS's corporate counsel sent an email to Frank Corral, Defendant Brad Corral, and Plaintiffs Laurie Corral and Amy Galloway regarding changes to CHS's non-disclosure agreement, in which the corporate counsel mentioned "the prospect of the company being sold."

47.     On October 28, 2021, CHS's corporate counsel sent an email to Plaintiffs Laurie Corral and Amy Galloway regarding CHS's non-disclosure agreement, in which the corporate counsel again referenced "the potential sale of the company."

48.     On November 1, 2021, CHS's corporate counsel sent an email to Plaintiffs Laurie Corral and Amy Galloway regarding a visit to Frank Corral, in which the corporate counsel again mentioned "the sale of the company" as a topic the corporate counsel discussed with Frank Corral.

49.     Because the Plaintiffs' shares in CHS represent their largest assets, Plaintiffs became concerned that Defendant Brad Corral would sell CHS and take a 10% transaction bonus without authorization.

50.     On November 2, 2021, in response to a request from Plaintiffs Laurie Corral and Amy Galloway, CHS's corporate counsel provided an explanation by email of the rights of directors and shareholders to review CHS's corporate records.

51.     In this November 2, 2021 email, CHS's corporate counsel stated that directors have the presumptive right to review corporate records.

52.     Upon information and belief, sometime before December 2021, Defendant Brad Corral and CHS management engaged Fifth Third Bank to increase CHS's revolving note commitment and to obtain a new term note.

53.     On November 20, 2021, Defendant Brad Corral, in his capacity as President and a Director of CHS, requested the signatures of Plaintiffs Laurie Corral and Amy Galloway, in their capacities as directors of CHS, on a resolution by the board of directors approving an increase in CHS's revolving note commitment amount to $⬛⬛⬛ and the issuance of a new $⬛⬛⬛ term note from Fifth Third Bank.

54.     On November 29, 2021, Plaintiffs Laurie Corral and Amy Galloway sent a request to CHS's corporate counsel, copying Defendant Brad Corral, and asked for a copy of the CHS bylaws and the corporate documents they had signed to date.

55.     Plaintiff Amy Galloway sent another request to Defendant Brad Corral later the same day, on November 29, 2021, asking for a copy of the bylaws.

56.     Defendant Brad Corral refused to send the CHS bylaws to Plaintiffs Laurie Corral and Amy Galloway, and claimed that Plaintiffs – who were members of the board of directors – could only view the bylaws and other documents at a board meeting in Illinois, and only after signing a non-disclosure agreement.

57.     On November 29, 2021, Plaintiff Laurie Corral responded that the proposed non-disclosure agreement was too restrictive and that Plaintiffs Laurie Corral and Amy Galloway had a right to receive the corporate bylaws and similar documents without a new non-disclosure agreement, consistent with company counsel's advice that directors are presumptively permitted to receive corporate documents.

58.     Brad Corral replied, "I'm not saying you can't view the documents at a meeting but an NDA will be required to continue as a board member."

59.     Defendant Brad Corral continued to refuse to provide, and did not authorize CHS to provide, copies of the bylaws or corporate documents, unless Plaintiffs Laurie Corral and Amy Galloway signed a new non-disclosure agreement and traveled to Illinois to view the documents in person.

60.     Separately, Plaintiffs Laurie Corral and Amy Galloway emailed Defendant Brad Corral on November 29, 2021 regarding Brad Corral's request for authorization of an increase in CHS's revolving note commitment and the issuance of a new term note from Fifth Third Bank.

61.     In this communication, Plaintiffs Laurie Corral and Amy Galloway requested information about the proposed financing and CHS's existing debt obligations to enable Plaintiffs to make an informed decision to approve or reject the board resolution.

62.     Defendant Brad Corral replied to Plaintiffs Laurie Corral and Amy Galloway on November 29, 2021, but did not provide Plaintiffs the information they requested.

63.     For example, Plaintiffs Laurie Corral and Amy Galloway asked, "Does CHS have any other significant debt obligations in addition to the proposed bank debt and Shareholder notes? If so, please detail." Defendant Brad Corral responded, "Outside of shareholders notes, CHS has all the normal obligations (bank, vendors, payroll, etc.)."

64.     Plaintiffs also asked, "Please demonstrate the capacity of CHS to service these debt obligations. We have never had any financial documentation to analyze this ourselves." Defendant Brad Corral replied, "Fifth Third bank has done the analysis so there is nothing more to do."

65.     Further, Plaintiffs asked for the documentation that CHS had provided to Fifth Third in obtaining the financing offer. Defendant Brad Corral responded, "I applaud you for scrutinizing Fifth Third Bank's approval process, I assume you need to do your fiduciary duty for Fifth Third Bank. Once we have a signed NDA I'll send you CHS financials in a secure manner."

66.     On or around November 29, 2021, Defendant Brad Corral set a deadline of December 3, 2021 for Plaintiffs Laurie Corral and Amy Galloway to sign the board resolution authorizing the loan extension with Fifth Third Bank, and he instructed Plaintiffs that if he did not have a signed resolution by December 3, 2021, he would assume Plaintiffs Laurie Corral and Amy Galloway would not be signing the resolution as directors.

67.     On December 2, 2021, Plaintiff Amy Galloway emailed Defendant Brad Corral expressing concern that Amy Galloway and Plaintiff Laurie Corral lacked sufficient information to determine if the proposed financing was in the best interest of the company.

68.     In the same December 2, 2021 communications, Plaintiff Amy Galloway asked specific questions about the impact of the proposed financing on the company and its shareholders, the risks of the proposed financing, the planned use of proceeds from the financing, and Fifth Third Bank's approval of the financing request. Amy Galloway also wrote that she and Plaintiff Laurie Corral were willing to sign a non-disclosure agreement to alleviate any concern about the security of confidential company information.

69.     Plaintiffs Laurie Corral and Amy Galloway emailed Defendant Brad Corral on December 3, 2021 again asking for information necessary to decide whether additional debt financing was in the best interest of CHS. For example, Plaintiffs Laurie Corral and Amy Galloway once again requested the documentation that CHS provided to Fifth Third regarding the financing – *i.e.*, they asked for already-collected information that would pose no burden on CHS to provide, and which they believed was important for their evaluation of whether to sign the proposed board resolution to approve the proposed financing.

70.     Defendant Brad Corral replied on December 4, 2021, but again refused to provide the documents Plaintiffs Laurie Corral and Amy Galloway requested, demanding a non-disclosure agreement before he would allow them to review the documents at CHS offices, despite the fact that they were members of the board of directors whose approval was required to authorize the proposed financing.

71.     On December 9, 2021, Defendant Brad Corral and Frank Corral signed a board resolution amending the bylaws that reduced the number of directors to two, resolved that Frank Corral and Brad Corral were the only two directors of CHS, and removed Laurie Corral and Amy Galloway from their positions as members of the board of directors of CHS's wholly owned subsidiaries, RMI, Inc. and Highway Steel, Inc.

72.     On December 10, 2021, outside counsel to CHS contacted Plaintiffs Laurie Corral and Amy Galloway and informed them that Defendant Brad Corral had removed them from their positions as members of the board of directors of CHS.

73.     Unbeknownst to Plaintiffs Laurie Corral and Amy Galloway, despite Defendant Brad Corral's repeated request that they sign the board resolution approving the proposed financing, Defendant Brad Corral executed two notes with Fifth Third Bank. The notes were

dated November 19, 2021 – *before Defendant Brad Corral even told Plaintiffs Laurie Corral and Amy Galloway about the potential financing*.

74.     By doing so, Defendant Brad Corral appears to have violated CHS's bylaws. Specifically, despite the requirement set forth in CHS's bylaws that no loans may be contracted and no evidences of indebtedness shall be issued unless authorized by a resolution of the board of directors, CHS executed the $▊▊▊▊ revolving note commitment and the $▊▊▊▊ term note with note dates of November 19, 2021 – a time when Laurie Corral and Amy Galloway were members of the board of directors – without Laurie Corral's and Amy Galloway's consent.

75.     Defendant Brad Corral and CHS management did not decide to sell CHS in 2021.

### PLAINTIFFS' DEMANDS FOR BOOKS AND RECORDS

76.     The aforementioned series of events – Defendant Brad Corral's purported intention to take an unauthorized ten percent transaction bonus on any potential sale, Defendant Brad Corral's refusal to share the CHS bylaws with the CHS directors unless they signed a stringent, separate non-disclosure agreement, and Defendant Brad Corral's act of removing Plaintiffs Laurie Corral and Amy Galloway as directors when they asked for documents to evaluate whether the proposed financing was in CHS's best interest – all raised grave concerns for Plaintiffs regarding the management of CHS's operations and assets.

77.     Because of these concerns, Plaintiffs, through their counsel, made a written demand pursuant to 805 ILCS 5/7.75(b) on January 14, 2022 to CHS to inspect books and records related to CHS's financial condition and operations ("Demand"). *See* Exhibit 4.

78.     Plaintiffs identified three independent proper purposes for their Demand:

- To determine whether the President and controlling shareholder is acting, and has acted, in the best interests of CHS and all shareholders in pursuing a significant increase in the revolving note commitment and the issuance of a new term note from Fifth Third Bank, or in the alternative, in pursuing a sale

of CHS;

- To evaluate potential mismanagement of CHS's assets and possible self-dealing related to the amount of compensation paid to CHS's President, Brad Corral, who is also the sole owner of all voting shares; and

- To assess the value of their Shares in the event of a sale.

79.     Plaintiffs identified the following books and records as the subject of their

Demand:

- Current bylaws and all amendments to the bylaws;

- Shareholders' Agreement and all amendments to the Shareholders' Agreement;

- Records reflecting ownership of CHS stock, including stock certificates;

- List of current CHS directors;

- Financial records for the period beginning with CHS's fiscal year 2019 through the date of the letter, including quarterly unaudited and annual audited financial statements, cash flow statements, value of equity in CHS, and current indebtedness of CHS;

- Directors fees paid to all directors and full compensation history for CHS's President (beginning with CHS's fiscal year 2013 through the date of the letter);

- All documentation reflecting any approval of the President's compensation sought from, or provided by, CHS officers or directors; and

- Corporate records or documents reflecting the following for the period beginning with CHS's fiscal year 2019 through the date of the letter:

    o  Weekly inventory reports;

    o  Scrap inventory data, including inventory on hand and current cost per ton;

    o  Significant budgetary items, including current expenditures and expenditures planned in the next year;

    o  Current status of proposed increase in the revolving credit facility amount and the issuance of a new term note with Fifth Third Bank, including documents reflecting the credit facility and term note if it

has been closed; and

o   Current status of discussions regarding sale of CHS and all investment banker, pitch, sale or similar materials prepared in connection with any potential sale of the Company, including any such materials that include a potential estimated sale value for CHS.

80.     Upon information and belief, as the President of CHS, Defendant Brad Corral directed CHS's response to the Demand to examine CHS's books and records.

81.     Through counsel, CHS disputed whether Plaintiffs' demand was supported by a proper purpose, but on February 4, 2022 CHS produced some, but not all, corporate books and records responsive to the Demand.  *See* Exhibit 5.

82.     On February 10, 2022, Plaintiffs, through their counsel, sent a second letter to CHS through counsel, requesting a full production of books and records responsive to the Demand and detailing the deficiencies in CHS's initial response.  *See* Exhibit 6.

83.     Through counsel, CHS replied to Plaintiffs' second letter on February 24, 2022 and produced additional corporate records addressing some, but not all, of the deficiencies Plaintiffs identified in CHS's prior production.  *See* Exhibit 7.

84.     On March 28, 2022, Plaintiffs, though their counsel, sent a third letter to CHS through counsel identifying two requests from the Demand that CHS had not fully complied with.  *See* Exhibit 8.

85.     Through counsel, CHS replied to Plaintiffs' third letter on April 28, 2022 and produced additional documents responsive to the Demand.  *See* Exhibit 9.

86.     Two documents CHS produced in response to the Demand were the signed financing documents with Fifth Third Bank, which revealed that Defendant Brad Corral executed these notes dated November 19, 2021, without agreement from then-directors, Plaintiffs Laurie Corral and Amy Galloway – contravening CHS's bylaws.

87.     Defendant Brad Corral's intransigence in the face of requests for basic information and documents supporting his planned course of entering into the Fifth Third Bank financing troubled Plaintiffs Laurie Corral and Amy Galloway and led to their initial demand to examine books and records.

88.     Then, the revelation that Defendant Brad Corral had executed loan documentation with Fifth Third Bank dated November 19, 2021 (before he sought approval of existing directors Laurie Corral and Amy Galloway) raised additional concerns for Plaintiffs that Defendant Brad Corral had violated CHS's bylaws and had increased CHS's indebtedness to the detriment of the company, and contributed to a new demand for books and records.

89.     Specifically, on June 22, 2022, Plaintiffs, through their counsel, sent a fourth letter to CHS through counsel that expressly constituted a "new request" for updated financial and operations information ("Second Demand"). *See* Exhibit 10.

90.     Plaintiffs identified that the purpose for this new request to examine documents was to allow Plaintiffs to evaluate CHS's financial health during the first half of the 2022 calendar year given Plaintiffs' majority ownership of CHS's Shares and Plaintiffs' obligations to make quarterly estimated tax payments on behalf of CHS, an S corporation.

91.     Plaintiffs also identified that the request in the Second Demand to examine records was reasonable because CHS compiles the data requested as part of its routine business operations.

92.     Plaintiffs specifically described the following books and records as the subject of their Second Demand:

- Consolidated monthly financials in the Statement of Income and Balance Sheet for the two quarters preceding June 2022;

- Consolidated monthly inventory and scrap reports for the two quarters

preceding June 2022; and

- Records of the President's semiannual bonus calculation and calendar year base salary for the two quarters preceding June 2022.

93.     Upon information and belief, as the President of CHS, Defendant Brad Corral directed CHS's response to the Second Demand to examine CHS's books and records.

94.     Defendants CHS and CHS President Brad Corral, through counsel, refused to consider the Second Demand and refused to produce any books and records. *See* Exhibit 11.

95.     On September 20, 2022, Plaintiffs, through their counsel, made a new written demand pursuant to 805 ILCS 5/7.75(b) to CHS to inspect books and records related to CHS's financial condition and operations in 2022 ("Third Demand"). *See* Exhibit 12.

96.     In this Third Demand, Plaintiffs incorporated the original proper purposes identified in their initial Demand and the Second Demand. Plaintiffs also identified that additional purposes for the Third Demand to inspect documents were to assess the value of their shares and to evaluate CHS's financial and operational health in the first three quarters of calendar year 2022 – a heightened concern given that CHS refused Plaintiffs' Second Demand and that Defendant Brad Corral and Frank Corral remained the sole directors of CHS, providing minimal visibility to Plaintiffs.

97.     Plaintiffs identified the following books and records as the subject of their Third Demand:

- Consolidated monthly financials in the Statement of Income and Balance Sheet for the quarter preceding September 2022;

- Consolidated monthly inventory and scrap reports for the three quarters preceding September 2022; and

- Records of the President's semiannual bonus calculation and calendar year base salary for the semiannual period preceding September 2022.

98.     Upon information and belief, as the President of CHS, Defendant Brad Corral directed CHS's response to the Third Demand to examine CHS's books and records.

99.     Defendants CHS and CHS President Brad Corral, through counsel, refused to consider the Third Demand and refused to produce any books and records. *See* Exhibit 13.

100.    Plaintiffs are injured by Defendant CHS's and Defendant Brad Corral's refusal to permit an examination of books and records of CHS's financial position because the lack of information renders them unable to ascertain the value of their shares in CHS – Plaintiffs' largest assets – and unable to protect their assets by evaluating whether CHS's officers and directors are acting as fiduciaries in the best interest of all shareholders.

101.    Disclosure of the requested documents would permit Plaintiffs to evaluate the decisions made by CHS management to ensure that CHS is being appropriately managed in the best interests of all of its shareholders. Furthermore, disclosure of the requested documents would allow Plaintiffs to monitor the value of their shares in CHS and assess their personal financial planning.

## COUNT I:

### (Against Defendants CHS Acquisition Corp. (d/b/a Chicago Heights Steel), Highway Steel, Inc., and RMI, Inc.)

### WRIT OF MANDAMUS ORDERING DEFENDANTS TO ALLOW INSPECTION OF CORPORATE BOOKS AND RECORDS PURSUANT TO 805 ILCS 5/7.75

102.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 101, inclusive, of this Complaint, as if fully restated herein.

103.    Pursuant to 805 ILCS 5/7.75, Plaintiffs have the right to inspect CHS's books and records for a proper purpose because Plaintiffs are trustees and beneficiaries of trusts that are registered shareholders of CHS.

21

104.    On June 22, 2022, Plaintiffs, through their counsel, made a written Second Demand to inspect CHS's books and records for the two quarters preceding June 2022.

105.    In their written Second Demand, Plaintiffs stated with particularity the records they seek to examine.

106.    In their original Demand and in their Second Demand, Plaintiffs identified proper purposes for their requests to examine books and records.

107.    Plaintiffs made their Second Demand with an honest motive and in good faith. Plaintiffs did not make their Second Demand for vexatious or speculative reasons, and Plaintiffs did not make their Second Demand for the purpose of harassment.

108.    Plaintiffs' Second Demand is not contrary to the interests of CHS.

109.    Defendants refused Plaintiffs' Second Demand to allow Plaintiffs to inspect and make extracts from certain of CHS's books and records of accounts.

110.    On September 20, 2022, Plaintiffs, through their counsel, made a written Third Demand to inspect CHS's books and records for the three quarters preceding June 2022.

111.    In their written Third Demand, Plaintiffs stated with particularity the records they seek to examine.

112.    In their Third Demand, Plaintiffs identified proper purposes for their requests to examine books and records.

113.    Plaintiffs made their Third Demand with an honest motive and in good faith. Plaintiffs did not make their Third Demand for vexatious or speculative reasons, and Plaintiffs did not make their Third Demand for the purpose of harassment.

114.    Plaintiffs' Third Demand is not contrary to the interests of CHS.

115.   Defendants refused Plaintiffs' Third Demand to allow Plaintiffs to inspect and make extracts from certain of CHS's books and records of accounts.

## COUNT II:

### (Against Defendant Brad Corral)

### PENALTY PURSUANT TO 805 ILCS 5/7.75 FOR WRONGFUL REFUSAL OF PLAINTIFFS' DEMAND TO INSPECT CORPORATE BOOKS AND RECORDS

116.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 101, inclusive, of this Complaint, as if fully restated herein.

117.   Pursuant to 805 ILCS 5/7.75(d), any officer, or agent, or corporation which refuses to allow any shareholder or his or her agent to examine and make extracts from its books and records of accounts, minutes, and records of shareholders, for any proper purpose, shall be liable to such shareholders in a penalty of up to ten percent of the value of the shares owned by the requesting shareholders.

118.   Defendant Brad Corral, as the President of CHS, is an officer and an agent of CHS, supervises CHS's affairs, and is in active control of CHS's office and management. The examination of books and records of account of the corporation, therefore, was subject to Defendant Brad Corral's control and direction, and Defendants CHS and Brad Corral refused to allow Plaintiffs to examine and make extracts from CHS's books and records.

119.   Defendants' refusal of Plaintiffs' Second Demand and Third Demand was wrongful because (i) Plaintiffs identified with particularity the books and records they seek to inspect; and (ii) Plaintiffs identified a proper purpose for their Second Demand and Third Demand. The conduct is particularly egregious given that Defendant Brad Corral knows that Plaintiffs are the owners of          of CHS's stock, and because every document requested is kept in the ordinary course of business. In other words, Defendant Brad Corral knows that

23

Plaintiffs have a strong interest in the materials demanded and that producing the documents would cause no burden to the Company.

120.    Pursuant to 805 ILCS 5/7.75(d), due to his wrongful refusal of Plaintiffs' Second Demand and Third Demand, Defendant Brad Corral is liable to Plaintiffs for a penalty of up to ten percent of the value of the shares owned by Plaintiffs.

121.    Pursuant to 805 ILCS 5/7.75(d), such penalty is in addition to all other damages and remedies to which Plaintiffs are entitled by law.

122.    Plaintiffs have not sold or offered for sale any list of shareholders of CHS or another corporation within the last two years.

123.    Plaintiffs have not aided or abetted any person in procuring any list of shareholders for any such purpose.

124.    Plaintiffs have not improperly used any information secured through any prior examination of the books and records of account, or minutes, or records of shareholders of CHS or any other corporation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court enter judgment against Defendants CHS Acquisition Corp. (d/b/a Chicago Heights Steel), Highway Steel, Inc., RMI, Inc., and Brad Corral as follows, and award Plaintiffs the following relief:

(A)    On Count I, issue a writ of mandamus ordering Defendants CHS Acquisition Corp. (d/b/a Chicago Heights Steel), Highway Steel, Inc., and RMI, Inc. to permit Plaintiffs to inspect, in person or by agent, the books and records identified herein and in Plaintiffs' Second Demand and Third Demand;

(B)   On Count II, order Defendant Brad Corral to pay Plaintiffs a penalty of ten

percent of the current value of the shares held by Plaintiffs pursuant to 805

ILCS 5/7.75(d);

(C)   Award Plaintiffs their costs and reasonable attorneys' fees for bringing

this action; and

(D)   Award Plaintiffs such other and further relief the Court deems just and

proper.

Date: November 2, 2022                    Respectfully submitted,

_____

One of the Attorneys for Plaintiffs

Eric Swibel (ARDC No. 6297743)
*eric.swibel@lw.com*
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767